UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARY MARILYN G.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C25-5666-MLP

ORDER

## I.      INTRODUCTION

Plaintiff appeals the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in assessing her testimony, a lay witness statement, three medical opinions, and vocational expert testimony. (Dkt. # 8.) The Commissioner argues that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 10.) Plaintiff filed a reply. (Dkt. # 11.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

ORDER - 1

## II.   BACKGROUND

Plaintiff was born in 1981, has a high school education, and has no past relevant work. AR at 37. Plaintiff was last employed in May 2022, below a substantial gainful level. *Id.* at 21, 90, 258.

In June 2021, Plaintiff applied for benefits, and later amended her alleged disability onset date to June 2021. AR at 18. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing in April 2024, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 18-39.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, that Plaintiff had the severe impairments of major depressive disorder, bipolar disorder, an anxiety disorder, posttraumatic stress disorder ("PTSD"), insomnia, attention deficit hyperactivity disorder, bilateral carpal tunnel syndrome, and bilateral shoulder bursitis. AR at 22. The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform simple, light work with frequent social interactions and occasional overhead reaching. *Id.* at 28.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-4. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

## III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

ORDER - 2

conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV.    DISCUSSION

### A.    The ALJ Erred in Evaluating Medical Evidence

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

#### 1.    *Wendy Hartinger, Psy.D.*

In June 2021, Dr. Hartinger examined Plaintiff and filled out a Psychological/Psychiatric Evaluation form, opining that she had a marked limitation in maintaining punctual attendance and moderate limitations in communicating and performing, maintaining appropriate behavior,

ORDER - 3

completing a normal work day and week, and goal setting. AR at 456. Dr. Hartinger examined Plaintiff again in April 2023. *Id.* at 671. Her opinions remained the same except that attendance improved from severe to moderate and goal setting improved to no or mild limitation. *Id.* at 673.

The ALJ accepted Dr. Hartinger's moderate limitations and rejected the June 2021 marked limitation. AR at 34. The ALJ found that, while the marked limitation may have been accurate at that time when Plaintiff reported no mental health treatment, the longitudinal record reflected predominantly normal objective findings and progress with outpatient care. *Id.*; *see also id.* at 456 (Dr. Hartinger opined that limitations would last 6-9 months with available treatment). Plaintiff argues that the ALJ was incorrect because she was in mental health treatment by June 2021, taking Adderall, clonidine, and hydroxyzine. (Dkt. # 8 at 8 (citing AR at 417, 421, 423, 454, 527-32).) This does not demonstrate harmful error in the ALJ's analysis because, whether Dr. Hartinger's assessment was accurate in June 2021, the ALJ correctly noted that the longitudinal record throughout the relevant period reflects almost entirely normal mental status examination findings except for intermittently anxious or frustrated mood or affect. *See* AR at 35 (citing *id.* at 454-59, 463-500, 509-53, 573-642, 671-99, 728-59, 761-72); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (Social Security disability must be based on impairments lasting at least 12 months). Inconsistency with the medical evidence was a valid reason to discount Dr. Hartinger's marked limitation. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).

Plaintiff further contends the ALJ erred by failing to incorporate the accepted moderate (defined as "significant") limitations into the RFC. (Dkt. # 8 at 7-9.) The ALJ limited Plaintiff to simple, repetitive tasks and no more than frequent interactions with supervisors, coworkers, and the public. AR at 28. Plaintiff does not explain how this fails to incorporate Dr. Hartinger's moderate limitations but appears to argue that the ALJ must use the same words found in Dr.

ORDER - 4

Hartinger's opinion. (*See* dkt. # 8 at 8-9 ("RFC finding does not include any limitation on [Plaintiff's] ability to complete a normal workday"). An ALJ need not use the same words but may translate medical opinions into an RFC formulation "consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). Here, the ALJ found that work restricted to simple, repetitive tasks with reduced social interaction, for example, would make it easier to maintain attendance and appropriate behavior and thus accommodate moderate limitations. Plaintiff fails to identify any inconsistency between the RFC and Dr. Hartinger's moderate opinions.

Accordingly, the Court concludes the ALJ did not err in assessing Dr. Hartinger's opinions.

### 2.   *Irene Mudehwe, FNP*

In June 2021, Ms. Mudehwe completed a Physical Functional Evaluation form, supported by her treatment notes, opining that Plaintiff could perform only sedentary work. AR at 547. She further specified that Plaintiff's bilateral carpal tunnel syndrome moderately to markedly interfered with lifting, carrying, handling, pushing, pulling, and reaching; bursitis interfered moderately with lifting, carrying, handling, pushing, pulling, and reaching; PTSD and bipolar disorder interfered moderately with seeing, hearing, and communicating; and stress fracture of foot did not interfere with basic work activities.[3] *Id.* at 680.

---

[3] The ALJ and the Commissioner suggest that Ms. Mudehwe's opinion regarding stress fracture was internally inconsistent (AR at 33-34; dkt. # 10 at 11), but it appears she filled the form out as instructed. *See* AR at 680.

ORDER - 5

The ALJ discounted Ms. Mudehwe's opinion as unsupported by her findings and inconsistent with minimally abnormal findings in the record. AR at 34 (citing *id.* at 573-642, 728-59, 761-72). With regard to supportability, Ms. Mudehwe found tenderness and decreased strength and range of motion in both shoulders, as well as tenderness and decreased range of motion in both wrists. *Id.* at 531. The ALJ did not explain why this was insufficient support for a limitation to sedentary work, which involves lifting a maximum of ten pounds and frequently lifting lightweight items. *See id.* at 681. The ALJ's supportability finding was not sustained by substantial evidence.

With regard to consistency, the ALJ cited normal gait and mobility, but these do not contradict the lifting restrictions for sedentary work. *See* AR at 34. The only examination the ALJ cited that assessed shoulders and wrists, aside from Ms. Mudehwe's, found bilateral shoulder discomfort with overhead flexion and abduction and positive Phalen's and Tinel's signs at both wrists in July 2024, although it also found normal strength. *Id.* at 763. This single examination, which was largely consistent with Ms. Mudehwe's, did not provide substantial evidence that the longitudinal record contradicted her opinion.

The ALJ also found Plaintiff had "no regular treatment" for her shoulder and wrist impairments. AR at 34. Ms. Mudehwe's treatment notes state that she strongly encouraged Plaintiff to seek a referral from her primary care provider for carpal tunnel and bursitis treatment. *Id.* at 687. Plaintiff testified she wears braces on her hands but has had no other treatment for carpal tunnel syndrome. *Id.* at 94-95. She has received injections in her shoulders and tries to do exercises but has difficulties such as her shoulder popping out of its socket. *Id.* at 97. The ALJ did not specify what further treatment would be expected for Plaintiff's conditions. Without more, this was not a valid reason to discount Ms. Mudehwe's opinion.

ORDER - 6

Accordingly, the Court concludes the ALJ erred by discounting Ms. Mudehwe's opinion without a valid reason supported by substantial evidence.

3.    *Derek Leinenbach, M.D.*

In July 2024, Dr. Leinenbach examined Plaintiff and opined that she was limited to, inter alia, standing and walking four hours per day, reaching occasionally, and handling and fingering frequently. AR at 765-67. The ALJ rejected limitations beyond those found in the RFC because they were unsupported by Dr. Leinenbach's "minimally positive" examination and inconsistent with the record showing only "minimally abnormal" physical examinations and "no regular treatment" for carpal tunnel syndrome or shoulder bursitis. *Id.* at 36.

The ALJ's reasons were not supported by substantial evidence. Regarding supportability, Dr. Leinenbach observed bilateral shoulder discomfort with overhead flexion and abduction, positive Phalen's and Tinel's signs at both wrists, reduced lumbar flexion and extension, mild tenderness of the entire lumbar spine, and positive straight leg raise test on the right. AR at 763. The ALJ did not explain why these shoulder, wrist, and back impairments are insufficient to support standing, walking, reaching, and handling limitations. Regarding inconsistency, as discussed above, the only comparable examination was Ms. Mudehwe's, which was largely consistent, and the ALJ did not explain what further treatment was expected for carpal tunnel syndrome and shoulder bursitis. Accordingly, the Court concludes the ALJ erred in discounting Dr. Leinenbach's opinion.

**B.    The ALJ Erred in Evaluating Plaintiff's Testimony**

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze

ORDER - 7

testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the April 2024 hearing, Plaintiff described chronic pain in her feet, hands, and shoulders. AR at 108. She testified that she could lift a gallon of water with two hands and could walk for fifteen minutes before needing a ten-minute break. *Id.* at 96, 106, 324. She could sit for ten minutes on a pillow or with her back bent to accommodate a cyst on her tailbone. *Id.* at 108. She drops things regularly due to numbness in her hands. *Id.* at 110. She cannot reach overhead or behind. *Id.* at 111. Plaintiff testified that anxiety makes it difficult to go out and she must leave a store if there are too many people. *Id.* at 113-14. In Function Reports in September 2021 and February 2023, Plaintiff alleged difficulty focusing. *Id.* at 297, 324; *see also id.* at 114.

The ALJ discounted Plaintiff's testimony based on inconsistency with her daily activities, objective medical evidence, and conservative treatment. AR at 30-32. The ALJ noted Plaintiff could do household chores, prepare meals, shop in stores, carry groceries, drive, pay bills, and use a computer and smartphone, and that she had worked part time during a portion of the relevant period. *Id.* at 30. Plaintiff contends the ALJ ignored the difficulty she has with these activities and that the activities were not comparable to a full time job. (Dkt. # 8 at 17.)

1.      *Physical Symptom Testimony*

An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ reasonably rejected Plaintiff's testimony that she can only sit for ten minutes as inconsistent with her testimony that she can drive for twenty minutes. AR at 30, 103, 108.

ORDER - 8

The ALJ rejected other exertional limitations because Plaintiff worked as a house cleaner, although only for a few hours per week, which typically requires light exertional capacity. AR at 30, 90. This was a valid reason to discount Plaintiff's exertional limitation testimony until her employment ceased around May 2022. With regard to the rest of the relevant period, however, Plaintiff testified that she stopped working because of numbness in her hands and pain in her shoulders. *Id.* at 91. She would drop things at her clients' homes and had to sit down frequently because her feet hurt, and her clientele gradually dwindled. *Id.* at 110-11. The ALJ also noted Plaintiff can lift grocery bags, but she makes sure they are not too heavy by putting only a few things in each bag. *Id.* at 102. The ALJ erred in discounting Plaintiff's testimony regarding lifting, standing, and walking on this basis.

The ALJ noted Plaintiff cared for her disabled adult son. AR at 30. The Commissioner argues he depended on her for his "daily needs," but this misstates Plaintiff's testimony. (*See* dkt. # 10 at 4 (citing AR at 104).) Plaintiff testified that she must tell her son what to do; for example, she showed him how to make meals and now he can make simple meals such as Hamburger Helper or Top Ramen by himself. AR at 104. This does not contradict Plaintiff's testimony as to her limitations.

With regard to treatment, as discussed above, the ALJ erred in discounting Plaintiff's testimony of hand and shoulder limitations because she had no "significant" treatment, such as surgery, medication, or physical therapy, for her carpal tunnel syndrome and shoulder bursitis during the relevant period. AR at 30-31.

With regard to medical evidence, the ALJ acknowledged "intermittent abnormal findings" of the hands and shoulders but pointed to intact vascular function; no tremor, atrophy, or abnormal muscle tone; intact sensation and reflexes; normal grip and manipulation; and

ORDER - 9

normal thumb function.[4] AR at 31 (citing *id.* at 522-53, 679-88, 761-72). Most of these do not contradict Plaintiff's testimony. However, the ALJ reasonably discounted her testimony that she often drops objects due to hand numbness based on Dr. Leinenbach's finding that Plaintiff had normal sensation to light touch in her hands and could "grip and hold objects securely to the palm by the last three digits of either hand" and "grasp and manipulate large and small objects with the first three digits of either hand." *Id.* at 763; *see Smartt*, 53 F.4th at 498 (ALJ may discount testimony inconsistent with objective medical evidence).

Accordingly, the Court finds the ALJ erred in rejecting Plaintiff's testimony of lifting, standing, and walking limitations. The ALJ did not err in discounting testimony regarding dropping objects and sitting.

2.      *Mental Symptom Testimony*

The ALJ discounted mental limitations based on normal mental status findings and because Plaintiff made progress with routine, conservative treatment of outpatient therapy and medication management. AR at 31-32 (citing *id.* at 454-59, 463-500, 509-69, 573-642, 671-719, 728-72). Plaintiff contends the ALJ erred in discounting her mental symptom testimony because therapy and psychiatric medications are not conservative, and improvement does not mean she can work. (Dkt. # 8 at 8, 17.) Plaintiff does not address the ALJ's finding of predominantly normal medical evidence.

---

[4] The Commissioner points to normal gait, but the ability to walk across a doctor's office does not contradict testimony that Plaintiff can walk for 15 minutes at a time. (Dkt. # 10 at 5 (citing AR at 531).) The Commissioner argues Dr. Leinenbach observed normal shoulder range of motion, but he also reported shoulder discomfort with overhead flexion and abduction. (*Id.* (citing AR at 763).) Moreover, these are improper *post hoc* arguments on which the Court cannot rely. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995).

ORDER - 10

The record of normal examination findings provided a clear and convincing reason to discount Plaintiff's mental symptom testimony. *See Smartt*, 53 F.4th at 498. The ALJ reasonably discounted testimony of difficulty concentrating because of normal concentration findings on examination and because her provider found she was able to "maintain concentration unimpaired" throughout a visit. AR at 458, 481. Her testimony of difficulty with social interaction was also reasonably discounted based on normal behavior on examination and her self-reports of social activity. *Id.* at 26, 30 (citing *id.* at 296 (spends time with others "a lot"; "I'm social when I need to be"), 323 (spends time with others "almost every day")).

Accordingly, the Court concludes the ALJ did not err in discounting Plaintiff's testimony of mental impairments. On remand, however, the ALJ must reevaluate Plaintiff's testimony regarding her standing, walking, and lifting limitations.

### C.    The Lay Witness Statement

In September 2021, Plaintiff's mother completed a Function Report describing limitations consistent with Plaintiff's testimony. AR at 283-90. The ALJ discounted it for the same reasons. *Id.* at 36-37. For the reasons discussed above, on remand the ALJ should reevaluate whether the statements provide significant, probative evidence regarding Plaintiff's standing, walking, and lifting limitations. *See Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (ALJ may not reject "significant probative evidence" without explanation).

### D.    The Vocational Expert's Testimony

Plaintiff contends the ALJ erred by accepting the vocational expert's testimony that employment as a photocopy machine operator, routing clerk, or inspector/hand packager, which were consistent with the assessed RFC, together provided over 240,000 jobs in the national

ORDER - 11

economy. (Dkt. # 8 at 4-6.) The Court need not address this matter because the ALJ must reevaluate the evidence as discussed above and may assess a different RFC on remand.

**E.     Scope of Remand**

Plaintiff appears to request remand for an award of benefits. (*See* dkt. # 8 at 10, 14, 18.) She asserts that there are no outstanding issues for the ALJ to resolve but makes no argument in support. (*See id.* at 14.) This is insufficient for the extraordinary remedy of remand for an award of benefits. *See Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017) (award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule.").

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate Ms. Mudehwe's and Dr. Leinenbach's opinions, Plaintiff's testimony, and her mother's statements; reassess the RFC as appropriate; and proceed to step five as necessary.

Dated this 10th day of February, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 12